## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SCANDINAVIAN SHIP SUPPLY CO.** and | : | **CIVIL ACTION** |
| **JOSEPHINE JANSSON,** | : | |
| **Plaintiffs,** | : | |
| | : | **NO. 12-1732** |
| **v.** | : | |
| | : | |
| **JANE BLUMENFELD,** | : | |
| **Defendant.** | : | |

**Goldberg, J.**                                                                 **May 14, 2015**

### MEMORANDUM OPINION

This case involves a dispute over the validity of a note and mortgage and allegations that these documents were fraudulently procured. Presently before me is Defendant's motion for summary judgment. Defendant essentially argues that Plaintiffs have failed to identify sufficient facts to establish fraud. After careful review of the record, and for the reasons stated below, I agree with Defendant and will grant the motion in its entirety.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed unless otherwise indicated:

Scandinavian Ship Supply Company, Inc. ("SSSC") was a marine supply and ship chandlery business which was owned and operated out of the property in question, 121-120 Christian Street, Philadelphia, Pennsylvania ("Christian Street Property"). According to Plaintiffs, Bengt Jansson (deceased) and his wife, Josephine Jansson, owned and operated SSSC.[1]

Jack Blumenfeld, the deceased husband of Defendant Jane Blumenfeld, and Bengt

---

[1] Defendant asserts that Bengt Jansson alone owned and operated SSSC. This disputed fact does not affect the outcome of this case.

Jansson had a long standing personal and professional relationship which spanned several decades. The parties dispute the quality of this relationship. According to Defendant, Jack Blumenfeld and Bengt Jansson were close friends for many years with Bengt Jansson turning to Jack Blumenfeld for assistance regarding the financial affairs of SSSC. Plaintiffs, on the other hand, contend that Bengt Jansson and Jack Blumenfeld had been estranged for approximately twenty-five years as a result of Jack Blumenfeld's "ongoing fraudulent behavior" with respect to his involvement in the Jansson family's financial affairs.

The parties do agree that Jack Blumenfeld performed development services in connection with SSSC's efforts to enhance the value of the Christian Street Property. However, the parties dispute the extent and value of those activities as well as whether Bengt Jansson authorized Jack Blumenfeld to undertake those activities.

On November 3, 2009, Bengt Jansson signed a promissory note payable to Jack Blumenfeld in the amount of $300,000 and a mortgage on the Christian Street Property securing the note.

On April 5, 2012, SSSC filed an initial complaint against Jack Blumenfeld alleging that he fraudulently induced Bengt Jansson into signing the mortgage and note or, in the alternative, that he forged Bengt Jansson's signature. However, at a subsequent hearing before me on "Plaintiffs' Motion for an Order to Prevent Dissipation of Assets by Defendant," Plaintiffs conceded that they could not prove that Bengt Jansson's signature was a forgery.

On June 30, 2012, Bengt Jansson died. On August 5, 2012, Jack Blumenfeld died. On August 15, 2012, SSSC and Josephine Jansson filed an amended complaint against the Estate of Jack Blumenfeld raising essentially the same allegations pled in the original complaint – that the note and mortgage were procured through fraud. On October 10, 2013, an Order was entered

granting Plaintiffs' motion to substitute Jack Blumenfeld's wife, Jane Blumenfeld, as the party defendant. On November 30, 2012, SSSC sold the Christian Street Property for $1,610,000.00. Upon selling the property, Plaintiffs placed $400,000 in an escrow account pending the resolution of this case.

## II.   <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party, and a factual dispute is "material" if it might affect the outcome of the case under governing law. <u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the non-moving party. <u>Galena v. Leone</u>, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. <u>Schaar v. Lehigh Valley Health Servs., Inc.</u>, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing <u>Williams v. Borough of W. Chester, Pa.</u>, 891 F.2d 458, 461 (3d Cir. 1989)).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial <u>Celotex</u> burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." <u>Id.</u> at 322.

3

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A).

III.   **DISCUSSION**

Plaintiffs allege that the note and mortgage are invalid because Jack Blumenfeld fraudulently induced Bengt Jansson's signature. Alternatively, Plaintiffs allege that the mortgage and note fail for lack of consideration. Defendant has moved for summary judgment on both theories, asserting that there is insufficient evidence to support either claim.

**A.  Plaintiffs' Claim that the Mortgage was Secured by Fraud**

The elements of fraud are: "(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result." Scaife Co. v. Rockwell-Standard Corp., 446 Pa. 280, 285 (1971).

Plaintiffs' theory of fraud appears to be that Jack Blumenfeld misrepresented the value and nature of services he rendered in connection with the development of the Christian Street Property in order to induce Bengt Jansson to sign the mortgage agreement. Defendant responds that Plaintiffs' sole evidence of this fraud is Josephine Jansson's testimony that Jack Blumenfeld wrongfully induced Bengt Jansson to enter into the mortgage and Linda Jansson's testimony that her father, Bengt Jansson, was deceived. Defendant argues that this evidence is not sufficient to

demonstrate fraud and Plaintiffs resort to "tarnishing the reputation of Jack Blumenfeld with cites to dated and unrelated litigation."

Plaintiffs counter that there is "voluminous evidence showing Jack Blumenfeld's ongoing scheme to defraud the Janssons."[2] Despite Plaintiffs' assertion of "voluminous evidence," much of the contentions identified by Plaintiffs are not supported by reference to actual admissible evidence in the record.

Plaintiffs points to the following "evidence" which they contend creates a genuine issue of a material fact as to their fraud claim: 1) Jack Blumenfeld had previously forged Bengt Jansson's name; 2) Jack Blumenfeld fraudulently induced the Janssons to pay him for work he purportedly did in connection with qualifying the Jansson family farm for an easement program; 3) Jack Blumenfeld misstated to Bengt Jansson the work he did to develop the Christian Street Property; 4) Defendant failed to show that Jack Blumenfeld loaned Bengt Jansson $300,000 or otherwise failed to demonstrate why a $300,000 interest in the Christian Street Property would be conveyed; 5) Robin Switzenbaum, Jack Blumenfeld's daughter, testified that she was unaware of Jack Blumenfeld undertaking any activities that would justify the mortgage; 6) Linda Jansson's belief that her father did not voluntarily agree to give Jack Blumenfeld a second

---

[2] The statements of undisputed facts submitted by both Defendant and Plaintiffs are deficient. Defendant's "statement of undisputed facts" contains no citations to the record. Plaintiffs' statement is replete with conclusory assertions and argumentative opinions.

Additionally, many of the "facts" that the parties contend are undisputed are vigorously in dispute. For example, Plaintiffs contend "[n]o additional money is owed to Jack Blumenfeld, Defendant Jane Blumenfeld, son Eric Blumenfeld or their daughter Robin Switzenbaum." Defendant, on the other hand, asserts that "the debt owing from Bengt Jansson to Jack Blumenfeld under the $300,000 promissory note was not repaid." The parties have consistently advocated that the central issue in this litigation is the validity of the mortgage and note, not the extent of the money owed. As such, it is unclear why the parties believed it was appropriate to include unrelated facts regarding whether the note has been satisfied.

mortgage based on her knowledge of her father's business activities and his relationship with Jack Blumenfeld; 7) Jack Blumenfeld did not have any money so the mortgage could not have been made in contemplation for repayment of advances from Jack Blumenfeld; 8) the absence of SSSC documents which refer to the existence of the mortgage or note; and 9) Bengt Jansson referred to Blumenfeld in derogatory terms.

The first two pieces of evidence identified by Plaintiffs deal with forgery and fraud allegedly committed by Jack Blumenfeld in connection with an unrelated transaction that occurred years before the mortgage transaction currently at issue. This appears to be evidence of a prior bad act, offered to establish propensity, which is subject to the limitations set forth in Federal Rule of Evidence 404(b).

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The proponent of prior bad act evidence "must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged." States v. Jemal, 26 F.3d 1267 (3d Cir. 1994). Plaintiffs have failed to articulate how evidence of Blumenfeld's alleged wrongdoing in unrelated circumstances is admissible under any of the 404(b)(2) exceptions. As the proponent of this evidence, Plaintiffs bear the burden of offering such an explanation.

However, even assuming that these two pieces of evidence are admissible under Rule 404(b)(2), they are not sufficient to create a genuine issue of material fact as neither contention

establishes that Blumenfeld made a material misrepresentation in connection with the Christian Street Property mortgage and note. And in any event, although originally alleged, Plaintiffs have now conceded that they cannot prove a forgery in this case. The concession makes it even more tenuous that evidence of prior alleged forgeries would be admissible.

Regarding the third contention, Plaintiffs do not offer any admissible evidence in support of the conclusory statement that Blumenfeld misrepresented the development services he rendered in connection with the Christian Street Property. Plaintiffs only proof comes from Linda Jansson's affidavit which states "[a]s best as I can determine from a review of SSSC records and records produced by the Defendant in discovery, Jack Blumenfeld never performed real estate services for the Christian Street property valued at $300,000" and "by my calculations, Jack Blumenfeld spent very little time on 'development' activities for the Christian Street Property." (Linda Jansson Aff. ¶¶ 14 and 98.) Linda Jansson's affidavit is inconsistent insofar as she states that Jack Blumenfeld spent no time developing the Christian Street Property but at the same time also states that he spent some, albeit "very little," time on development activities. In any event, these statements are not based on firsthand knowledge and unsupported assertions cannot create a genuine issue of material fact.

Plaintiffs' fourth and fifth contentions are that Defendant failed to produce evidence as to why Bengt Jansson would convey a $300,000 interest in the Christian Street Property to Blumenfeld and that Robin Switzenbaum was unaware of Blumenfeld undertaking any activities that would justify the mortgage. This argument attempts to reverse the burden of proof by asserting that Defendant has not disproved fraud or offered evidence affirmatively establishing that the mortgage was valid. Plaintiffs bear the burden of proving the elements of their fraud

claim. As such, these assertions do not rebut Defendant's showing that Plaintiffs have failed to offer evidence establishing the elements of fraud.

The sixth piece of "evidence" – Linda Jansson's belief that the mortgage was fraudulently induced – is not based on firsthand knowledge and is an unsupported assertion. Such assertions cannot create a genuine issue of material fact.

The remaining evidence relied upon by Plaintiffs – the seventh, eighth and ninth contentions – even when viewed together and in the light most favorable to Plaintiffs do not create a genuine issue of material fact. None of these contentions affirmatively demonstrate that Jack Blumenfeld made a fraudulent misrepresentation in connection with the signing of the mortgage and note. In the absence of any evidence to support their claim, Plaintiffs instead point to unrelated prior litigation involving Jack Blumenfeld, Linda and Jane Jansson's opinions, and the lack of documentary corroboration of the mortgage's validity. This is insufficient evidence of fraud, which would defeat summary judgment. As such, I find that Defendant is entitled to judgment as a matter of law on Plaintiffs' challenge to the mortgage as fraudulently induced.

**B. Plaintiffs' Claim that the Mortgage Fails for Lack of Consideration**

Defendant also argues that Plaintiffs' claim that the note and mortgage are unenforceable for lack of consideration fails as a matter of law under the Pennsylvania Uniform Written Obligations Act ("UWOA"). The UWOA provides "that a written release or promise, hereafter made and signed by the person releasing or promising, shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound." 33 Pa. Cons. Stat. Ann. § 6. The UWOA "makes clear that a written agreement shall not be void for lack of consideration if it contains an

express statement 'that the signer intends to be legally bound' by it." <u>Yocca v. Pittsburgh Steelers Sports, Inc.</u>, 578 Pa. 479, 493 (2004).

The Note in question states "[f]or value received and intending to be legally bound, SCANDINAVIAN SHIP SUPPLY COMPANY, INC., a corporation, and BENGT JANSSON . . . promises to pay Jack Blumenfeld . . . the principal sum of Three Hundred Thousand Dollars ($300,000) lawful money." (Declaration of Robin Switzenbaum, Ex. E, Doc. No. 64-6.) The express statement that Bengt Jansson and SSSC intend to be bound is sufficient consideration under the UWOA and the note and mortgage, therefore, are not subject to attack on the grounds of insufficient consideration.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion for summary judgment is granted. An appropriate Order follows.